HOUSTON LIGHTING & POWER CO., 1905, v. WALSH et al. (No. 5460.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1915. Rehearing Denied June 28, 1915.)

ELECTRICITY ⊚⟿16—DANGEROUS PREMISES—LIABILITY.

A light and power company erected a light post by cutting a girder along the outer edge of an awning sloping from a building to the outer edge of the sidewalk. A number of people went out on the awning, though not protected by a railing, to view a parade, and it fell, injuring plaintiff. Access was obtained by stepping out through windows. Crowds had been on the awning on former occasions, but there was nothing to show that the company knew that fact. Held, that the company was not liable, since the accident was not the natural result of its wrongful act of leaving the girder cut or since it could not anticipate that the accident would result therefrom, and the intervening act of the persons entering on the awning was negligence proximately causing the accident.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. ⊚⟿16.]

Appeal from District Court, Harris County; William Masterson, Judge.

Action by G. P. Walsh against the Houston Lighting & Power Company, 1905, and others. From a judgment for plaintiff against defendant named, it appeals. Reversed and remanded.

Andrews, Streetman, Burns & Logue, W. L. Cook, and Blake Dupree, all of Houston, for appellant. John Lovejoy, Presley K. Ewing, and L. E. Blankenbecker, all of Houston, for appellees.

CARL, J. G. P. Walsh sued Charles and Annexa Miller, owners of a building, the Houston Lighting & Power Company, 1905, and the Houston Electric Company, to recover damages for personal injuries caused by an awning to the building giving way under a load of people who were viewing a circus parade; said awning having fallen on appellee and injured him. It is alleged that the Houston Lighting & Power Company, 1905, which we will refer to herein as the Power Company, and the Houston Electric Company had jointly erected a light post at the place of the accident, and in doing so had cut the girder running along the outer edge of the awning, and failed to repair it so as to make it as strong as it should have been made, which negligence was the proximate cause of the injury. This girder was cut, and the post set in the edge of the sidewalk, the post extending up through the outer edge of the awning.

On the day of the accident, there was a circus in Houston, and somewhere between 15 and 25 people went out on this awning to

view the parade. It was reached by passing through a pool hall on the second floor of the building and up through windows. Witnesses differ as to how high these windows were, some saying they had to step up about a foot to a. foot and one-half, while others say that they were about two to two and one-half feet high, and they had to stoop in passing out to prevent striking their heads against the windows. The awning sloped from the building outwardly, and there was no railing or banister on the outer side. It was covered with a kind of tar paper.

The man who ran the pool hall and others swear that he notified the people not to go upon said awning, telling them it was unsafe, and some of them say they actually came back, in response to his warning, and sat in the windows. J. S. Taylor, who ran the pool hall, says he called for a policeman to try to keep the people back. Quite a number of people deny having heard any warning, and this is uniformly true of those who have suits pending for the same accident. Upon the trial, the suit was dismissed as to the Millers, the owners of the building, and the court instructed a verdict in favor of the Houston Electric Company. The case was tried on special issues, and judgment rendered against the Power Company for the sum of $6,000, and from that judgment this appeal is taken.

The first assignment of error complains of the action of the court in refusing a peremptory instruction in favor of appellant, "because the evidence wholly failed to raise the issue of any duty owing to the plaintiff from defendant, such as alleged in the petition. In this connection it may be stated that the petition alleged that the unsafe condition of the awning was known, or, by the exercise of ordinary care, would have been known, to the defendants and each of them, and that by exercising ordinary care they would have anticipated that the awning would be used by crowds of people on occasions like the one when the accident happened.

The evidence is sufficient to show that crowds had been on this awning on former festive occasions, but there is no evidence to show that the Power Company knew that the awning had been so used. The nature of the structure was such that it would indicate to any reasonable mind that it was not intended as a place for people to gather. It sloped from the building, of which it was a part, to the outer edge of the sidewalk, and it had no railing. The floor was made of tar paper or some similar material, and there were no doors leading onto it. Access was obtained by stepping up through windows. And there is no evidence, and we may add, no probability that it would have fallen but for the unusual occurrence of the crowd getting out on it, on the occasion when appellee was injured. So, if in the very nature of the awning and the surroundings it was unsuited to the congregation of people thereon, how could appellant have anticipated that a crowd would gather there, unless it had knowledge that they had been in the habit of so doing? To hold appellant liable, it must be shown that the accident was the natural and probable result of the wrongful act of leaving the girder cut and in a weakened condition, or appellant might have anticipated that such would be the result. Supposing the appellant's act originally to have been negligent:

"It is generally held, however, that if subsequent to the original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote." Seale v. G., C. & S. F. Ry. Co., 65 Tex. 278, 57 Am. Rep. 602; Neely v. F. W. & R. G. Ry. Co., 96 Tex. 277, 72 S. W. 159; T. & P. Ry. Co. v. Bigham, 90 Tex. 224, 38 S. W. 162; Light & Power Company v. Lefevre, 93 Tex. 606, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; City of Greenville v. Pitts, 102 Tex. 3, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843.

Without the negligence of the crowd in going upon the awning, or the negligence of those having charge of the building in permitting them to do so, there would have been no injury. Therefore there were undoubtedly intervening acts of negligence. As said in T. & P. Ry. Co. v. Bigham, supra:

"Was there an unbroken connection between the wrongful act and the injury—a continuous operation? We think not."

The throng upon the street were not expected to go upon the roof, and would not have done so if the owners or occupants of the building had not permitted them to do so. In the first place, it was negligence for them to be permitted to go upon a roof or awning which the occupant of the building knew to be unsafe, and the people who went thereon were negligent trespassers. But even if they were licensees, that would not relieve them from negligence. So there were intervening acts of negligence, the absence of either of which would have prevented the injury. We therefore sustain the first and second assignments of error, the last of which is predicated upon the failure of the court to grant a new trial upon the same ground as the first assignment.

We think the court further erred in refusing to submit to the jury the issue as to whether the Power Company, or its agents, actually knew that crowds were in the habit of standing upon this awning, and sustain the third and fourth assignments.

From what we have said, it follows that the judgment is contrary to the evidence and not supported thereby, and the fifth assignment is sustained.

The judgment is reversed, and the cause remanded.